No. 3152

Second Circuit

LOMBARDINO ET AL. v. 707 TIRE CO., INC.

(April 9, 1931. Opinion and Decree.)
(May 20, 1931. Rehearing Refused.)

Dimick & Hamilton, of Shreveport, attorneys for plaintiffs, appellants.

Alex Smith, of Shreveport, attorney for defendant, appellee.

McGREGOR, J. Mrs. Annie Lombardino and her husband, P. Lombardino, bring this suit against the defendant, 707 Tire Company, Incorporated, for damages alleged to have been sustained because of the plaintiff Mrs. Annie Lombardino, being run down and injured by an automobile of the defendant, commonly known as a "trouble-shooter," while it was being operated by defendant's employee in the regular course of his employment. The damages claimed are for pain and suffering, permanent injury, loss of time, and future incapacity for work, medical expense, and clothing destroyed.

The accident out of which the suit arises occurred on May 1, 1926, on Cotton street in the city of Shreveport, about one hundred or one hundred fifty feet west of the intersection with Louisiana avenue. Mrs. Lombardino and her daughter had been in the office of Dr. L. H. Pirkle on the second floor of a brick drug store building on the north side of Cotton street. Her automobile, in which she had come to the doctor's office from her home in the country south of Shreveport near the town of Lucas, was parked just across the street on the south side and parallel with the curb. She and her daughter had left the building with the intention of crossing the street and going to the parked automobile; the mother preceding the daughter by a few feet. Mrs. Lombardino proceeded across the street a few feet, and just as she was about to reach her car on the south side of the street she was suddenly run upon, knocked down, and partly run over by a "trouble shooter" belonging to the defendant and being driven by one

of its employees in a westerly direction on the south or left side of the street. The daughter was on the north curb of the street when her mother was thus run down. As soon as the plaintiff could be extricated from beneath the car, she was carried back to the office of Dr. Pirkle, who administered first aid treatment, then sent her to a sanitarium, where she remained for several days. As a direct result of the accident, the lady's clothing was practically ruined by being torn and saturated with blood. She suffered from concussion of the brain, and remained in a semi-conscious condition for some time. Severe bruises and lacerations were on her head and body. After she was released from the sanitarium, she returned to her home, but continued to come to the doctor's office for treatment for several weeks. At the time of the trial on April 7, 1927, she complained of suffering from pain, nausea, and dizziness, which remained with her ever since her injury. She also claimed that her eyes and ears had been permanently affected.

The defense set up is a denial of negligence on the part of the driver of the "trouble shooter," and in the alternative the defense is contributory negligence on the part of the plaintiff Mrs. Lombardino in running in front of defendant's car. Plaintiffs' demands were rejected in the lower court, and from that judgment they are prosecuting this appeal.

There were seven witnesses sworn in behalf of the plaintiffs, two of whom were the physicians who treated the injuries received, and four of whom were eyewitnesses to the accident, and one of whom arrived just after it happened.

Charlie Lombardino, son of the plaintiffs, testified that he drove the car on that day, and that he had parked it just

opposite the doctor's office, and at the time of the accident was sitting in the car, facing Louisiana avenue in an easterly direction, waiting for his mother and sister. He never saw his mother come out of the brick building, nor did he see her crossing the street, but he saw the defendant's car cross Louisiana, coming toward him on the south or left side of the street. He states that the driver did not wait for the green light to come on, but crossed on the yellow or caution light. He heard his sister scream from the curb on the opposite side of the street, and turned to look to the left in time to see the "trouble shooter" knock his mother down upon the pavement near the rear end of the car in which he was sitting. He immediately jumped from his car, and was the first person to reach his mother and pull her from underneath the "trouble shooter." He testified that the driver of the "trouble shooter" did not appear to be driving carefully, and that there was no reason for his being on the left side of the street; that there were no cars parked on the right side where he should have been. The plaintiff Mrs. Lombardino testified that she had left her daughter in the drug store, which is on the first floor of the brick building, and was crossing the street on her way to her car where her son was waiting for her. She testified further that, as she entered the street, she looked both ways and saw no car coming, but that, after she had gotten almost across the street near the rear end of her Ford car, she was unexpectedly struck on her left by the defendant's car.

Mary Lombardino, the daughter of the plaintiffs, who accompanied her mother to the doctor's office and the drug store on this occasion, testified that she was on the curb on the north side of the street, in the act of crossing, when she saw her mother nearly across on the other side, and at the same time saw the "trouble shooter" run against her and knock her down. She screamed and attracted the attention of her brother, Charlie Lombardino, who was sitting in the parked car waiting for them. She also testified that no cars were parked in front of the drug store on the north side. Mrs. Phillips, who lives on the south side of Cotton street, just opposite the drug store where the accident occurred, testified that she was on her front gallery and saw Mrs. Lombardino as she was crossing the street. She never noticed the "trouble shooter" until it struck the plaintiff about four feet from the curb on the left side of the street. Tony Mandino, another witness for the plaintiffs, testified that he arrived at the scene of the accident just after it had happened and saw the "trouble shooter" on the left side of the street. Drs. Pirkle and Williams testified as to the extent of the injuries received by the plaintiff.

There were three witnesses sworn for the defendant. Abe Ross, the driver of the "trouble shooter," who was in the employ of the defendant at the time, testified that he was proceeding on Cotton street in a westerly direction on his way to the defendant's place of business on Texas avenue; that, as he reached the intersection of Louisiana avenue, the red traffic light blocked him; that he waited for the green light, when he proceeded on across; that, as he crossed the white line which marks the path for pedestrians in the crossing, he was going at the rate of about 10 miles an hour, and saw the plaintiff and her daughter attempting to cross the street ahead of him (at a distance of about one hundred or one hundred fifty feet). He claimed that the two women entered the street from between two parked cars, and that immediately he cut to the left in

order to avoid striking them; that in their confusion the daughter ran back to the curb, and the mother, after hesitating, ran across the street; that, if he had cut to his right,. he would have struck the daughter. Mr. Merrill Monk, who worked in the drug store, and a Mr. Egan both testified that the accident occurred near the middle of the street.

The record in this case is convincing that the driver of the "trouble shooter" was guilty of gross negligence, and that but for that the accident would never have occurred. According to his testimony, he saw the plaintiff in the street just as he was crossing the white line about one hundred or one hundred fifty feet away, while he was going not over ten miles an hour. He says he soon noticed that they were confused—one went forward and one back. If he observed this confusion, as he says he did, it was his duty to stop as quickly as possible and give them a chance to recover themselves and to escape danger, and, if he observed them in this confusion one hundred or more feet away, while he was going at not over ten miles an hour, it was his duty and he could have easily stopped his car before reaching them, and he should have done this instead of trying to run ahead of the plaintiff as she was (according to his theory) trying to get across the street before he reached her. Taking his testimony as true, it is evident that he could easily have prevented the accident by stopping. We think that the driver's testimony is true in everything except the speed at which he says he was running, and, if he was running at a greater rate of speed, his negligence is even greater. At whatever rate of speed he was running, since he saw the plaintiff and her daughter at the distance that he says he did, under the circumstances he had no right to proceed on his way in an endeavor to pass the two women while they were in the street in a state of confusion. This was gross negligence on his part, and was the proximate cause of the injury. In order to justify himself to a certain degree, he testified that he observed the two women enter the street from between two parked cars in front of the drug store. Other testimony in the record convinces us that there were no parked cars at that point, and that he had ample room to go to the right in order to avoid the accident without even stopping.

The cases of Baader v. Driverless Cars, Inc., 10 La. App. 310, 120 So. 515, 517, and Baquie v. Meraux, 11 La. App. 368, 123 So. 338, 339, justly sustain us in our conclusion. In the case of Baader v. Driverless Cars, Inc., the court said:

"Defendant pleads contributory negligence. Plaintiff is alleged to have been negligent, in that she walked across the street against the signal controlling traffic at that intersection. But the clear weight of the evidence is to the contrary. Even if she did, the driver of the automobile, Jones, had ample opportunity to see her in time to avoid running her down and could easily have avoided the accident, as there were but few, if any, automobiles moving in his direction at the time."

In the case at bar, Mrs. Lombardino says she looked both ways and saw no cars. The defendant's driver says he saw her one hundred or one hundred fifty feet away while he was going not over ten miles an hour and while he thought she was confused by the approach. He therefore had ample opportunity to avoid running her down, and could easily have avoided the accident by stopping. In the Baquie v. Meraux case, the court said:

"If she exhibited confusion and darted, first one way, and then the other, her actions in that regard, even though she ran

directly across the path of the automobile, cannot be regarded as contributory negligence for the reason that, in the emergency created by the unexpected appearance of the automobile, she could not be expected to exercise the same degree of judgment as one not subject to the fear of sudden disaster. Blashfield's Cyclopedia of Automobile Law, vol. 1, p. 597.

"If the Meraux car had been driven as slowly as it is said to have been, the accident could have been easily avoided by stopping the automobile altogether, until the safety of the four pedestrians was assured."

So, in the case under consideration, if the "trouble shooter" was being driven as slowly as it is said to have been, the accident could have been easily avoided by stopping altogether until the safety of the two women was assured.

Mrs. Lombardino's bodily injury consisted of concussion of the brain caused by her sudden precipitation to the pavement. As a result of this concussion of the brain, she has suffered considerably since at varying intervals with nausea and pains of different kinds. In addition, she received several severe bruises and lacerations about the head and body. Her suffering was necessarily intense for quite a period of time following the accident, and she no doubt will suffer more or less the rest of her life on account of the injury, for at the time of the trial, ten months after the accident, she was still suffering. The hospital and medical bill incurred amounted to $115.50, and her clothing, which was destroyed, was worth at least $25.

For the reasons assigned, the judgment appealed from is annulled and reversed, and it is therefore ordered, adjudged, and decreed that there be judgment herein in favor of plaintiff, P. Lombardino, and against the defendant, 707 Tire Company, Incorporated, for the sum of $140.50, with 5 per cent interest from January 12, 1927, for the expenses incurred on account of the injuries inflicted on his wife and for the value of her clothing destroyed; and it is further ordered, adjudged, and decreed that there be additional judgment herein in favor of the plaintiff Mrs. Annie Lombardino against the defendant, 707 Tire Company, Incorporated, for the sum of $1,500, with 5 per cent interest from January 12, 1927, for pain and suffering and permanent injury sustained; the defendant to pay all costs of both courts.