## FAECHER v. CLARET.
### No. 16078.

Court of Appeal of Louisiana. Orleans.
June 24, 1935.

Harry R. Cabral and Lewis R. Graham, both of New Orleans, for appellant.

Jas. N. Brittingham, Jr., of New Orleans, for appellee.

JANVIER, Judge.

Miss Cecelia Faecher was injured in an automobile accident at about 9 p. m. on May 20, 1933, in front of the New Orleans Public Library at Lee Circle, at the lower end of St. Charles avenue in this city. She and a companion, walking from the pavement which surrounds the circle, had stepped into the roadway of St. Charles avenue at a point on the uptown edge of the circle and had partially crossed that roadway towards the corner of the public library, when the accident occurred. Defendant, Claret, driving a Chevrolet automobile in an uptown direction, had approached the circle on Howard avenue and had turned to his right to proceed around the circle to St. Charles avenue, when he noticed Miss Faecher and her companion in the roadway. Just as he had completed the curve made necessary by his course around Lee Circle, and as he was again turning slightly to his right to go up St. Charles avenue, the accident occurred.

Miss Faecher contends that Claret negligently drove his car into her and knocked her down, and that he either saw or should have seen her and should have stopped his car or turned it aside to avoid her. She charges that he was also negligent in that he was operating his car at too high a rate of speed, and for the further reason that he failed to sound his horn as he approached her.

Claret states that he saw the two ladies in the roadway and that, as he approached, they stopped and thus indicated to him that it was their purpose to permit him to pass, but that, just as the left front portion of his car was passing them, plaintiff suddenly moved forward and stepped into the side of his car near the left rear wheel. He concedes that he may have failed to sound his horn, but he denies that his speed was excessive.

■ If the two ladies were already in the roadway, as defendant approached them, it was his duty to make certain that they were aware of his on-coming car and to do nothing which might suddenly alarm them, or cause them, because of excitement or fear, to run into danger. After they had left the sidewalk and had reached a point near the middle of the roadway—though they may have been negligent in assuming that position without first looking for approaching vehicles—they no longer had it within their power to easily avoid an on-coming car, and it was the duty of the driver of such a car to avoid them, or to afford them an opportunity to stop, or to safely continue their route across the street. This principle has often been announced, and we find it well stated in several cases. In Johnson v. Zeringue et al. (La. App.) 151 So. 105, 106, although the ultimate decision was in favor of the defendant, the legal principle was properly set forth in the following words:

" * * * Defendant, seeing plaintiff standing in the middle of the roadway and intent upon accomplishing the crossing, was under the duty of making certain that there was no danger in his permitting his auto to continue upon its course. * * * "

In Baquie v. Meraux, 11 La. App. 368, 123 So. 338, 339, we said:

"When the driver of an automobile sees four pedestrians walking along the highway in front of him, it is his duty to take extraordinary care to prevent injuring them, and he must take reasonable precautions to make certain that the pedestrians are aware of his approach."

In Simpson v. Hyde, 147 So. 759, 760, our brothers of the Second Circuit used the following language:

"Seeing plaintiff in the center of the highway manifestly engaged in crossing, defendant was guilty of grave negligence in leaving his right-hand side of the road which was clear for his passage. Had he properly slowed down and permitted plaintiff to continue his way across, there would have been no danger and no emergency. The dangerous situation was created by defendant's negligence. Suddenly faced with the emergency, plaintiff is not to blame if in his confusion he did not do the particular thing that would have avoided his injury. The natural impulse in such a case is to run in the direction already taken."

In Lombarding et al. v. 707 Tire Company, 16 La. App. 460, 133 So. 495, 497, the Court of Appeal for the Second Circuit said:

"The defendant's driver says he saw her one hundred or one hundred fifty feet away while he was going not over ten miles an hour and while he thought she was confused by the approach. He therefore had ample opportunity to avoid running her down, and could easily have avoided the accident by stopping."

See, also, Guillory v. United Gas Public Service Co. (La. App.) 148 So. 274.

Therefore, if these ladies had indicated that they were in any way confused or frightened, it would have been defendant's duty to take every precaution to avoid an accident, and, if their conduct indicated that they were not aware of the approach of his car, it was his duty to sound his horn and to maintain such control over his car as would permit of his avoiding them should they become excited and run in front of or into his automobile.

If, on the other hand, they indicated that it was their purpose to stop and to permit him to go by, there was no reason for him to assume that they, or either of them, would again move forward before his car could entirely pass.

" * * * When plaintiff looked up and stopped, thus indicating that he saw the car and intended to remain stationary until it should pass, there was no negligence in defendant in then permitting the automobile to continue on its course. There was no reason for him to assume that a grown man, apparently in the full possession of his faculties, would rush, at the last moment, into the path of an approaching car." Johnson v. Zeringue, supra.

■ The evidence leads us to believe that the ladies gave indication of an intention to remain stationary until the car should pass. Of Mr. Claret's statement that " * * * all at once they looked up and stopped * * *," we find corroboration in the testimony of one of plaintiff's witnesses, who said " * * * it looked like they stopped * * *."

There is no doubt that the impact resulted from the fact that Miss Faecher moved forward into the rear part of the car. Practically all of the witnesses agreed that the front part of the car did not strike her. Counsel suggests that the rear portion of the car, because it was turning, swung out, and it was then that it hit her.

But this was not possible. The car did not skid; Miss Faecher was on its left side and it was turning to its right. The arc described by the rear of the car was within that described by the front. Thus, if the front did not strike her, the rear could not have done so, unless she moved forward.

Manifestly, the speed of the car was not excessive. It was brought to a stop within a very few feet, Miss Faecher falling to the pavement immediately behind or alongside of the rear fender.

In Parker v. Thompson, 146 So. 181, 182, we found that the plaintiff "ran into the side of [defendant's] automobile." The facts of that case very much resemble those which we find here, and there we held that there could be no recovery. Here we find no fault in defendant, but we cannot avoid the impression that plaintiff was

grossly at fault in not noticing the approaching car and in not exercising any care or caution in crossing a dangerous thoroughfare.

We conclude that Miss Faecher, while in a position of safety and after having indicated an intention to stop, walked into the side of the passing car. This was negligence on her part, and it bars recovery.

For the reasons assigned, the judgment appealed from is affirmed, at the cost of plaintiff.

Affirmed.