We granted a rehearing in this matter because we entertained doubt that the evidence produced at the trial was sufficient to warrant the application of the doctrine of last clear chance. A re-examination of the record has made it necessary for us to review and again discuss the evidence upon which the conclusions reached in our original opinion are predicated.
The plaintiff, Sidney L. Hebert, received painful and serious personal injuries on August 5, 1940, when he was struck on his left leg by the front bumper of an automobile owned and driven by the defendant, Christian Meibaum. The accident occurred shortly after 1:00 p.m. on a clear day near the corner of Freret street and Napoleon Avenue in the city of New Orleans. Shortly before the accident, Hebert had been a passenger in an automobile owned and operated by a friend named Curran. This automobile had been driven on Napoleon Avenue in the direction of North Claiborne Avenue. Upon reaching the intersection of Freret street, it made a left hand turn into that street and proceeded in the direction of Carrollton Avenue. Upon entering Freret street, the plaintiff saw another car coming down Freret street which was being driven by another friend, a Mr. Richard Burch, the district manager of the H.G. Hill Stores (by whom Hebert was also employed) and, being desirous of engaging Mr. Burch in conversation, hailed him to stop. Mr. Burch responded to this request and stopped his car adjacent to the uptown riverside curb of Freret street, *Page 631 
approximately eight to ten feet from the pedestrian crossing at Napoleon Avenue. Mr. Curran, with whom Hebert was travelling, stopped his car across Freret street from the Burch car, adjacent to the uptown lakeside curb at a point about fifteen feet past the pedestrian crossing at the uptown intersection of Napoleon Avenue. As soon as the two cars were stopped, Hebert and Curran dismounted from Curran's car and walked across the street to the Burch car where they engaged in conversation with Burch. During this conversation, the two men, Hebert and Curran, positioned themselves in the street next to the left hand or driver's side of the Burch car, Hebert standing, with his left foot on the running board of the car and his right foot on the pavement, facing uptown, or towards Carrollton Avenue, and Curran had his right foot on the running board with his left foot on the ground facing towards downtown, or Canal Street. After conversing with Burch for some five or ten minutes, the men bid him goodbye. Upon doing so, Hebert immediately left his position, as above described, and attempted to re-cross the street, it being his intention to go back to the Curran bar which was parked on the opposite side. Curran had the same intention but, before starting across, he heard a terrific screeching of brakes and, believing that an accident was about to occur, maintained his position of safety. As Hebert proceeded across the street, he was struck by the front bumper of defendant's automobile, which was travelling down Freret street towards Napoleon Avenue, and received the injuries for which he now claims damages.
Hebert contends that the sole cause of the accident is attributable to the fault of Meibaum, who is charged with the following specific acts of negligence:
(a) In failing to keep a proper lookout and particularly in failing to see the plaintiff as the latter was crossing the street.
(b) In failing to sound his horn or give any warning of his approach.
(c) In failing to swerve to his right which swerving, plaintiff contends, would have prevented the accident.
(d) In failing to have his car under control immediately preceding and at the time of the accident.
(e) In failing to drive to the right of the center line of the two-way street on which the accident occurred.
Hebert further alleges that he was without fault in the premises and, alternatively, if the court should determine otherwise, then Meibaum is nonetheless responsible because he had a last clear chance of avoiding the mishap.
Conversely, Meibaum claims that the accident is due solely to imprudence and inattention on the part of Hebert, in that he left his place of safety at the side of the Burch car and walked across the street, at a point other than the pedestrian lane, at a time when he, Meibaum, was proceeding down Freret street at a normal rate of speed with his car under control; that Hebert's act in stepping directly into the path of the oncoming automobile created a sudden emergency and that, notwithstanding the fact that he, Meibaum, did everything which could be expected of a prudent man under the circumstances, the ensuing accident could not be avoided. In the alternative, Meibaum asserts that, if the court should find that he was negligent in any respect, then recovery is nevertheless barred because the proximate cause of the accident was due to Hebert's negligence in the particulars above mentioned. And he further pleads that there is no room here for the application of the doctrine of last clear chance as he did all that was required of a careful driver, acting in the emergency presented, to avert the accident.
The evidence presented by the parties on the issues formed by the pleadings is highly conflicting, and particularly so, with respect to the point in Freret street where the accident took place. It is the contention of Hebert that the Meibaum car struck him near the riverside rail of the uptown street car track, whereas, Meibaum declares that the mishap occurred approximately in the middle of the rails of the downtown street car track.
In view of these diverse contentions, it is important, at the outset, to ascertain the position of the Burch car on Freret street, the width of Freret street and location of the rails of the street car tracks which occupy a large portion of the thoroughfare. No maps or plans of Freret street and Napoleon Avenue at or near the vicinity of the accident have been offered in evidence and, therefore, there is nothing before us to show, with accuracy, the measurements of the street. We find, however, in the testimony given by Mr. Burch on behalf of plaintiff, that he was asked to give the *Page 632 
approximate measurements and to describe the street. His testimony exhibits the following: Freret street is a paved two-way thoroughfare running in an uptown and downtown direction. It intersects Napoleon Avenue at right angles and traffic at the crossing is controlled by an electric semaphore signal. On Freret street are two street car tracks of the New Orleans Public Service, Inc., one for cars proceeding uptown and another for those which run downtown. Mr. Burch estimated that the distance between the rails of each car track is 5 1/2 feet and that the space in the middle, separating the uptown and downtown track, is 5 feet, or a total width of 16 feet in the middle of the street which is occupied by the tracks of the New Orleans Public Service, Inc. In addition to this, he stated that the space from the riverside rail of the downtown street car track to the riverside curbing is about 9 feet and that, on the other side, the space between the lakeside uptown rail and the lakeside curbing is the same width. From this testimony, which is not disputed, it will be seen that Freret street has a total width of 34 feet.
The evidence also establishes the fact that the Burch car, in its parked position facing downtown, was about 10 feet from the pedestrian crossing at the uptown intersection of Napoleon Avenue and that the Curran car was across the street from it facing uptown at a distance of approximately 15 feet past said pedestrian crossing. The evidence further shows that the Burch car was parked close to the curb and that its left side was about 4 feet from the riverside rail of the downtown street car track.
Another fact, which is not in dispute, is important — that is, that the defendant's car was being brought to a quick stop when the accident was impending and that it did not travel over a foot or two after its front bumper struck Hebert. It is further shown that the point where the accident occurred, and where the Meibaum car stopped, was at least seven or eight feet from the uptown pedestrian lane at the intersection of Napoleon Avenue.
Bearing these uncontradicted facts in mind, we undertake a discussion of the evidence submitted by the opposing litigants in an effort to discern the true cause of the unfortunate occurrence. Hebert testifies that, while he was engaged in conversation with Burch, he was facing uptown (or in the direction from which Meibaum's car was coming) with his left foot on the running board of the Burch car and his right foot on the ground. That, when the conversation was concluded, he saw the Meibaum car coming down Freret street at a distance of at least 100 feet from him and at a speed of 40 miles per hour; that he turned his head to the right to look at the traffic semaphore light and, upon noticing that it was amber and changing to red and that therefore Meibaum would be compelled to bring his car to a stop at the pedestrian lane, he concluded that it was safe for him to cross the street, it being his intention to go back to the Curran car; that, being under this belief, he did not feel that it was necessary for him to look at the Meibaum car again; that he, therefore, walked into the street and that, when he had progressed some 12 or 14 feet and had reached a point near the riverside rail of the uptown street car track, he was struck by the left front bumper and fender of the Meibaum car. He further states that his path from the Burch car across the street was not straight but diagonal or towards the pedestrian crossing and he explained that he pursued this course because it was his intention to pass around the rear of the Curran car which was parked on the other side of the street.
The testimony of Burch is strikingly similar to that of Hebert with respect to plaintiff's movements from the time he left the side of the Burch car until the accident occurred. He, however, did not see the Meibaum car prior to the accident and is unable to state the speed at which it was travelling. But, like Hebert, he places the point of impact at about seven or eight feet from the uptown pedestrian lane at the intersection of Napoleon Avenue and approximately at the riverside rail of the uptown street car track.
On the other hand, we find that the evidence of Mr. Curran (whose testimony was taken on behalf of plaintiff out of court) is not in accord with that of Hebert and Burch, insofar as the point in the street where the accident occurred is concerned. Mr. Curran, who is a very large man (weighing approximately 250 pounds and standing 6 feet in height), states that, when he and Hebert crossed the street for the purpose of engaging in conversation with Burch, they positioned themselves at the left running board of the Burch car; that Hebert was facing uptown with his *Page 633 
left foot on the running board and his right foot in the street and that he was facing downtown with his right foot on the running board and his left foot in the street; that a conversation ensued which lasted approximately 10 minutes; that, at the conclusion of this conversation, he and Hebert told Burch goodbye and started back across the street; that Hebert started across before him (Curran); that, just at that moment, his attention was attracted by the screeching of brakes; that he immediately "hollered" at Hebert, without avail; that he (Curran) jumped back on the left running board of Burch's car and that Hebert was struck by the front bumper of the defendant's automobile. When asked how far the Meibaum car was from Hebert at the time he heard the screeching of brakes, he answered that it was about 10 feet. He further says that Hebert had not walked over six or seven feet into the street at the time he was struck and that the Meibaum car was "coming down on the inside of the street car track. The right hand side of the wheel was on the street car track and the other side of the wheel was on the street car track. He was coming I would say, if my judgment is good, about two or three feet from Burch's automobile."
Hence, according to Curran, the accident occurred at a point very close to the Burch automobile. We understand his testimony to mean that the Meibaum car was travelling practically in the downtown street car rails; that the wheels on the right side of the car were either in or slightly over the riverside rail of the downtown street car track and that the wheels on the left side were on or near the lakeside rail of the same track. This is evidenced by three factors. First, the witness testified that Hebert was six or seven feet from the Burch car at the time he was struck. (It was established by the evidence that the position in which Burch and Curran were standing was approximately four feet from the riverside rail of the downtown street car track and that the distance between the two rails of this track is approximately 5 1/2 feet.) Therefore, if Hebert walked seven feet into the street from the Burch car, when he was struck, it would place him approximately in the center of the rails of the downtown street car track. Second, because the witness stated that, when the accident occurred, the Meibaum car was about two or three feet from the side of the Burch car. This would place the right side of the Meibaum car at a point slightly to the right of the riverside rail of the downtown street car track. And third, because the witness stated that he jumped on the running board of the Burch car in order to avert injury to himself. If the Meibaum car was being driven, as Burch and Hebert say, between the uptown and downtown street car tracks and Hebert was struck at or near the riverside rail of the uptown track, there could have been no reason whatever for Curran to jump on the running board of the Burch car to avoid injury, as the automobile would have been at least 12 feet to the left of him.
Counsel for plaintiff, however, assert that Curran's testimony discloses that Hebert was struck near the riverside rail of the uptown street car track and they point to a statement of Curran which they say substantiates this contention. The statement referred to was made by Curran in answer to a question as to the place in the street where Hebert was hit; whether he was struck by the first or second rail of the downtown street car track on Freret street. His answer was "He was struck by the second rail on the downtown side of Freret street by the curb". We cannot see that this answer sustains the conclusion drawn by counsel. When Curran stated that Hebert was struck by the second rail on the downtown side of the street, he obviously meant the lakeside rail of the street car track which runs downtown. Moreover, if there be any doubt as to the interpretation to be given to the statement of the witness, it is fully explained by his other evidence wherein he points out that Hebert was struck six or seven feet from the left side of the Burch car and that the Meibaum car was approximately two or three feet from the Burch automobile when the accident occurred.
The testimony of Meibaum, if believed, leaves no doubt that the accident occurred solely through the fault of Hebert. He declares, in substance, that he lives three or four blocks from the place of the accident; that he was driving his car down Freret street at a speed of approximately 15 miles per hour with the right wheels close to or to the right of the riverside rail of the downtown street car track and his left wheels to the right or close to the lakeside rail of the track; that, as he approached the intersection of Napoleon Avenue, *Page 634 
he saw that the light was amber and changing to red and that, realizing that he would have to stop at the intersection, he slackened his speed to approximately 10 miles per hour; that he saw the Burch car parked near the curb on the right hand side of the street and also observed two men standing by the left hand side of the car near the running board; that, as he approached at this slow speed, he assumed that the men would retain their positions of safety; that no warning was given by either of them to indicate to the contrary but, despite this, that, when the front of his car reached or was close to the rear end of the Burch automobile, the plaintiff walked out in the street directly into the path of his vehicle. He further says that, being thus apprised of the sudden emergency, he applied his brakes, which were in good working order, but to no avail and that the front bumper of his car struck the plaintiff on the leg, either knocking him down or that the plaintiff fell down.
A careful re-examination of all of the evidence in the case, when considered in the light of the physical facts, has convinced us that Meibaum's testimony, supported to some extent by the evidence of Curran, exhibits a very plausible explanation of the mishap which, except for certain charges against his credibility which we will hereinafter discuss, should be accepted.
Counsel for Hebert have laid great stress, in their brief and oral argument, with respect to certain contradictions, inconsistencies and admissions contained in Meibaum's testimony which they say renders it worthless. It is also pointed out that the judge of the lower court, who saw and heard the witnesses, was apparently of the opinion that Meibaum's statement was not genuine and refused to believe it. And, on our own part, it must be confessed that, in our original opinion, we expressed doubt concerning Meibaum's credibility in view of certain contradictions which we found to be exhibited by his evidence.
In view of all of this, we have undertaken to re-investigate the charges made against Meibaum in an effort to discern whether he told the truth. One of the charges made by counsel for plaintiff is that Meibaum should not be believed because, notwithstanding his admission to the police and to his insurance company after the accident that he had struck plaintiff and knocked him down, he testified on the stand that he does not know whether he struck plaintiff or not and that when the accident occurred, it looked like Hebert "just stood up for a while there and then fell over" without any contact being made by the vehicle.
A careful re-examination of Meibaum's testimony has convinced us that his statement on the witness stand is not as inconsistent as it would at first appear. When the accident occurred and Meibaum saw Hebert fall to the ground, he naturally assumed that the fall resulted from contact with the front bumper of his car. Therefore, he readily admitted to the police and his insurance company that such was the case. However, when he was placed on the witness stand and had taken an oath to tell nothing but the truth, he refused to state positively that Hebert had been struck. He stated that he didn't know whether Hebert was struck or not because he did not see the contact between the bumper and plaintiff's body. He had applied his brakes and his car stopped approximately at the point where plaintiff fell. Therefore, he was unable to say with certainty whether contact was actually made or whether Hebert fell down as a result of having his equilibrium upset in view of the impending accident. At all events, we do not think the alleged inconsistency is as important as plaintiff's counsel would have us believe — for we are satisfied that Meibaum did not intend to make it appear that his automobile was not the cause of Hebert's injuries or that his statement should be considered as a reason to excuse him from blame.
Another charge against Meibaum is that, immediately after the accident, he admitted to Burch and Curran that he did not see Hebert walking across the street; that he was looking at the semaphore light, which was changing from amber to red, and that he was trying to beat the light as he was in a hurry. Meibaum denies that he made such a statement and, after due deliberation, we think that Burch and Curran were mistaken when they attribute this admission to him. It seems clear that, if the alleged statement could be accepted as a correct account of Meibaum's actions when he was approaching Napoleon Avenue, then it would have been impossible for the accident to occur in the manner portrayed by the undisputed facts forasmuch as it is plain that, if Meibaum never saw the *Page 635 
plaintiff, he would not have applied his brakes and would not have been able to stop the forward motion of his automobile as soon as it made contact with plaintiff's leg.
Another statement attributed to Meibaum is that he told Burch and Curran, immediately after the accident, "I am covered by insurance, don't worry about it." Meibaum denies that he made this statement to Burch and Curran but admits that, shortly after the accident, he visited Hebert at the hospital and, at that time, told Hebert "I carry insurance and it will be taken care of." He explains, however, that he intended by this statement to convey the information to Hebert that he was protected by insurance; that, in the event the insurance company felt that the accident was caused through his fault, Hebert would have no trouble in collecting for the damages sustained and that he did not mean to be understood that he was conceding that he was at fault. We think that this explanation is sufficient and cannot be regarded as an admission of negligence.
Finally, it is said that, whereas Meibaum testified at the beginning of his examination that the accident occurred 50 feet from the intersection of Napoleon Avenue, he later conceded that he was in error and that the collision took place approximately ten or fifteen feet on the uptown side of the pedestrian lane. This error in statement was admitted by Meibaum after the court and the litigants visited the scene of the accident. The admission of error, instead of having the effect of discrediting his testimony, strikes us as being commendable as it shows a desire on his part to be truthful in all respects. It was probably his impression, at the time he first stated that the accident occurred 50 feet from the corner, that such was the case but, after witnessing the scene in the presence of the court, he realized that he was mistaken.
In order to ascertain whether the defendant was guilty of fault, it is important to determine whether the collision took place at or near the riverside rail of the uptown street car track, as plaintiff claims, or whether it occurred within the confines of the lakeside and riverside rails of the downtown street car track, as contended by the defense. If it be true that Hebert was struck at the riverside rail of the uptown track after walking some 12 or 14 feet from the Burch car, then Meibaum was at fault because, under such circumstances, his car was not being driven wholly within the downtown or proper side of Freret street. On the other hand, if the accident occurred approximately in the middle of the downtown street car track on Freret street at a time when Hebert had walked some six or seven feet from the side of the Burch car, Meibaum cannot be declared to be negligent unless it be shown that he exercised no lookout whatever or that he was speeding or that he failed to have his car under control.
Hebert and Burch, as above stated, fix the point of impact approximately at the riverside rail of the uptown street car track. But plaintiff's other witness, Curran, disagrees with them and corroborates, in large measure, the testimony given by Meibaum that the accident occurred approximately 6 or 7 feet from the Burch car and at a point near the center of the downtown street car track. We think that the evidence of Curran and Meibaum, which we find to be supported by other facts and circumstances, clearly preponderates.
Moreover, Hebert's statement, respecting his actions just prior to the time he was struck, shows that he was guilty of the grossest sort of negligence. He was in a place of safety and he saw defendant approaching at a speed which he estimates to be 40 miles per hour. Despite this, he turned his gaze from the oncoming automobile and walked across its path without again looking in the direction from which it came. This evidence is vastly different from the statement Hebert made to the police shortly after the accident for, at that time, he declared "that he looked both ways before crossing the street * * * and did not see any automobiles." It is our impression that his statement to the police is probably more reliable than his testimony, as we find it difficult to believe that, if he had seen Meibaum's car approaching the intersection at a speed of 40 miles an hour and at a distance of approximately 100 feet from where he was standing, he would have been so foolhardy as to attempt to cross the street in front of the oncoming car.
In cases of this sort, where the testimony of the participants to a collision is in conflict, it is a well-established rule that the courts, in attempting to reach the correct solution, will examine the evidence *Page 636 
in the light of the physical facts so that their decision will be conformable to the reasonable probabilities of the case. When we apply this rule to the evidence in the matter at hand, it at once becomes plain that, if we should conclude that plaintiff's evidence should prevail over that of the defendant, we would be compelled to reject a large portion of the testimony given by plaintiff's own witness, Curran, relative to the point in the street where the impact occurred, the distance the Meibaum car was from plaintiff at the time the brakes were applied and other circumstances hereinabove mentioned.
On the other hand, by resolving that defendant's testimony gives an accurate account of the mishap, we reach a conclusion in agreement with the surrounding circumstances of the occasion. There are certain factors in this case that cannot be successfully contradicted. Initially is the fact that defendant saw plaintiff, either at the time or shortly after he emerged from the side of the Burch automobile. This is evident from the fact that everyone admits that defendant suddenly and successfully applied his brakes and that his car came to a complete stop upon making contact with plaintiff's body. Now, as to the exact point in the street where defendant first observed plaintiff, no one knows. But, if plaintiff walked only 7 feet into the street, it is certain that Meibaum saw him as soon as he emerged from the side of the Burch car, because Meibaum was able to bring his car to a sudden stop within a second from the time the emergency was created (assuming that plaintiff was walking at the normal gait of 4 miles an hour or 6 feet per second). Defendant says that he saw Hebert and Curran standing beside the Burch car and that, when the front of his automobile reached the rear of the Burch car, Hebert stepped out into the street. There is no evidence to contradict this testimony other than the alleged statement of Meibaum to Burch and Curran immediately after the accident to the effect that he never saw Hebert at all and which we have hereinabove disposed of. It also seems obvious to us that Hebert was at least partially screened from Meibaum's view by the body of Curran, who is a very large man and who was standing on the side of the Burch car with his back to the Meibaum car and between the line of vision which Meibaum had of Hebert. Clearly, the presence of Curran made it difficult for Meibaum to become apprised of Hebert's movements when he first started to walk across the street.
With respect to the speed of the Meibaum car, the only testimony in the record to offset defendant's statement that it was reasonable and prudent is the declaration of Hebert that he judged the speed to be 40 miles per hour. But this testimony, as we have above commented, is highly improbable and in conflict with the other facts and circumstances of the case.
Were this a case of first impression, we would have no difficulty in resolving that the accident was caused solely through the negligence of Hebert in that he emerged from a place of safety into the path of an oncoming vehicle without the exercise of the slightest care and caution. However, since the trial judge believed that defendant was at fault and since this court, on first hearing, approved his finding on the facts, we have been very hesitant to reverse these conclusions without being absolutely certain that they were erroneous. A reconsideration of the entire matter on this rehearing leaves no doubt in our minds that such is the case and we are now convinced that defendant is without blame in the premises and that the sole and only cause of the accident was plaintiff's negligence in walking into the street in front of the oncoming car at a place other than the pedestrian crossing at a time and under circumstances when the defendant, by use of all means within his control, could not avoid striking him.
Since we think that Meibaum's version of the accident is correct, most of the special charges of negligence made against him by plaintiff fall of their own weight. The only averments of fault which are not answered by his evidence are that Meibaum failed to blow his horn as a warning of his approach and that, by swerving to the right, he could have avoided the accident. We find no merit in either of these charges. There was no reason for Meibaum to sound his horn when he saw Hebert and Curran standing by the Burch car. They were in a place of apparent safety and it would be unreasonable to require him to anticipate that Hebert would walk out over the street car track directly in his path. With respect to the charge that Meibaum could have swerved to the right and have thereby *Page 637 
avoided the mishap, the answer is that, if this was a possible escape (which we doubt), he cannot be regarded as negligent for his failure to pursue such a course. He was confronted with a sudden emergency which was brought about by plaintiff's fault and, under such circumstances where he was required to act quickly and under stress, his conduct is not to be gauged by the standard which would be applicable where he had the opportunity of exercising foresight and deliberation.
Being of the opinion that Hebert's negligence, in walking into the street from his position of safety at the side of the Burch car, directly into the path of the Meibaum automobile, was the proximate cause of the unfortunate injury he sustained, we undertake a discussion of the contention made by his counsel that Meibaum had a last clear chance to avoid the accident. Counsel rely, in the main, on the decisions of our Supreme Court in Rottman v. Beverly, 183 La. 947, 165 So. 153, and Jackson v. Cook, 189 La. 860, 181 So. 195, wherein it is held, particularly in the last cited case, that the doctrine of last clear chance is applicable, despite the fact that the negligence of plaintiff has continued down to the moment of the accident and even though the defendant fails to discover plaintiff's peril, in cases where plaintiff's peril would have been apparent to defendant if the latter had been exercising a proper lookout — provided that, at the time when defendant should have discovered plaintiff's peril, he could have averted the accident by the effective use of the means within his control.
It is clear to us that the above stated doctrine cannot be fitted to the facts of the instant case. Meibaum has testified that he saw plaintiff and Curran standing beside the running board of the Burch car when he was a considerable distance from the intersection of Napoleon Avenue. He also stated that it was not until the front end of his car had progressed to a point close to the rear of the Burch automobile that Hebert, without previous warning, walked into the street directly in the path of his car. Obviously, therefore, defendant discovered plaintiff's peril as soon as it became apparent. As a consequence, the only question which remains is whether Meibaum was in a position to avoid the accident when he became apprised of the fact that plaintiff had placed himself in a perilous position.
On this point, the evidence in the case satisfies us that Meibaum did everything which could be expected of a reasonable man when confronted with a sudden emergency. Assuming that plaintiff walked at the normal gait of four miles per hour or six feet per second, which was applied by the Supreme Court in Rottman v. Beverly, supra, it took him approximately one second to walk the six or seven feet from the Burch car to the point in the street where he was struck. Defendant's car was being operated at a speed of ten to fifteen miles per hour and, if it was going ten miles per hour, it would have taken it one second to go fifteen feet and, if fifteen miles per hour, one second to go twenty-three feet. In either event, it is plain that, upon being suddenly confronted with plaintiff's peril, defendant was not far enough away to adequately bring his car to a stop and thereby avert the accident. Curran testified that, when Hebert walked into the street, he heard the screeching of brakes and that the Meibaum car was only ten feet from Hebert at the time the brakes of the car were suddenly applied.
In order to hold a defendant responsible under the doctrine of last clear chance, it is not enough that he had a last chance but the facts must demonstrate with reasonable certainty that the chance afforded him was a clear one. In other words, his opportunity must be such that a reasonably prudent man, placed in like position, could and would have acted with effectiveness. It is manifest to us that the chance, if any, which Meibaum had in the instant case falls far short of being a clear chance.
For the reasons assigned, it is ordered, adjudged and decreed that the original decree of this court be and it is hereby recalled and annulled; that the judgment appealed from be reversed and that plaintiff's suit be dismissed at his costs. The right of plaintiff to apply for a rehearing is reserved.
Original decree recalled.
Judgment of the trial court reversed.