GLADNEY, Judge.
This action is in tort, brought by Mrs. Anna K. Wheadon for fatal injuries received by her husband, Sam Wheadon, on the night of August 7, 1952 when struck by a 1953 model Plymouth automobile owned by Anderson-Dunnam Concrete Company, Incorporated, añd driven by James E. Porter, an employee. The Fidelity & Casualty Company of New York, the liability insurance carrier, was also named defendant.
It is alleged on that night about 8:00 o’clock Wheadon left his home on the west side of Plighway 71 about six miles north of Alexandria for the purpose of crossing said highway to find out if a telephone receiver was off the hook on the party telephone line used by plaintiff and her husband; that he took his flashlight with him and shortly thereafter he was struck by the car driven by Porter; and, further, that at the time the sky was cloudless with visibility for a considerable distance along the straight and level portion of the highway. It is charged that had Porter exercised ordinary care he should have seen petitioner’s husband in ample time to have avoided striking him and causing his death.
Respondents, by way of answer, assert Porter was driving the automobile in a northerly direction about thirty-five miles per hour in the right or east traffic lane; that he observed the deceased standing or walking on the west side of the highway with his back to Porter and facing in a western direction; that as the automobile approached the point almost directly opposite Wheadon, the latter suddenly wheeled and ran directly in front of the automobile and was hit in the east or northbound traffic lane. They further allege the sudden movement of Wheadon occurred under such circumstances it was impossible for Porter to stop his car before striking him and that when Wheadon was first observed by Porter he gave no indication whatever of any , intention of crossing to the opposite side of the highway. Finally, it is averred that after the unfortunate accident had occurred Porter first learned that the deceased was practically blind and undoubtedly Wheadon did not see the car at any time.
Pleading in the alternative, defendants charge Wheadon was guilty of negligence proximately causing the accident in attempting to walk upon and cross the highway knowing he was practically blind and could not see approaching automobiles, and further, that he was negligent in suddenly attempting- to cross from one side of the highway to the other directly in front of the on-coming automobile.
After trial judgment was rendered rejecting plaintiff’s demands, hence this appeal.
Accompanying Porter at the time of the accident were two fellow employees, Paul Walker and E. V. Blair, and proceeding in the same northerly direction directly behind Porter’s car was the automobile of Dr. Calvert Winter, who was taking members of his family out for. an evening ride. These three and Porter were the only eyewitnesses to testify upon the trial.
Porter testified that he was driving about thirty-five or forty miles per hour; that he first observed the deceased on the left side of the highway distant about one hundred feet, and when he was very close Wheadon turned back across the road and ran in front of the car. He says that when first observed Mr. Wheadon was facing in a westerly direction away from the northbound lane. He asserted he was so close to the deceased when he attempted to cross in front of him there was no opportunity to avoid the unfortunate accident although he applied his brakes and stopped as quickly as possible. He admitted that he did not sound his horn. Nor did he immediately *612 reduce his speed upon first .observing Wheadon.
Walker testified he thought he first observed Mr. Wheadon when the latter was about one hundred feet distant from the automobile, at which time Wheadon was on the shoulder of the road on the left facing southward. Then, he said, Wheadon turned around and faced toward the west. The witness estimated the car was traveling about thirty-five miles per hour and gave this description of the accident:
“Well, he was standing there with ■his. .back towards the road, the best I noticed, shining the light down on some houses and we got right up there close — I don’t know, we were pretty close to him, I believe I said four to six feet but it was awfully close, I don’t know how close it. was, he turned around and looked to me like he run and jumped in the road.”
About the only thing testified to by Blair was that he observed the deceased off to the left from the car. He consistently declined to answer with .any. degree of acceptable accuracy, so much so,' in fact, that his testimony is of very little value.
Dr. Winter who was in the following car testified when he observed Wheadon he was in the middle of the highway somewhat left of' its center. His version of the accident was:
“Well, I first saw him when I was about three hundred feet away from him, something like that I would imagine-, and as the car approached he stayed about the .same location; then just as the car reached him, just prior to when it reached his location he seemed, to dive in front of it.”
******
“He just turned around and dived right in front of the car, and then after he was struck he was knocked approximately twenty or thirty feet to the right side of th.e highway.”
The witness approximated the distance between the automobile and Wheadon when the latter attempted to cross the highway at from twenty to twenty-five feet. He stated he thought the automobile was at its full (sustained) speed when the deceased was struck as he did not think the driver had time -to slow down.
The defendants also called as one of their witnesses, Mr. B. C. McCann, who operated a store near the residence of the deceased. He testified that Wheadon was partly blind and in counting change would hold it within two inches of his eyes. He admitted, however, that Wheadon got around by himself and on many occasions had crossed the highway. Other testimony undisputedly shows Wheadon was able to and did make ordinary repairs about his property and performed all normal functions an average person could despite -some weakness of his eyes.
In their answer respondents say Porter “did see the deceased standing or walking on the west or southbound traffic lane but show that when he was first observed he gave no indication whatever of an intention to cross to the opposite side of the highway.” The position of 'Wheadon as the automobile approached is fixed as near but to the left of the center of the highway by Walker and Dr. Winter, and we believe this was the true situation, though Porter and Blair would place the deceased on the west shoulder. Furthermore, we find that when Wheadon came within Porter’s range of vision his back was toward the automobile and it was indicated he was unaware of its approach. Notwithstanding these danger signals Porter neither slackened the speed of the car nor did he sound his horn. The road being straight and the night clear, Porter should have observed Wheadon from a considerable distance, certainly not less than three hundred feet.
The instant case presents facts which we think call for application of the last clear chance doctrine as applied in Rottman v. Beverly, 1935, 183 La. 947, 165 So. 153 and Jackson v. Cook, 1938, 189 La. 860, 181 So. 195. In the Rottman case it was held that where a plaintiff
*613 “negligently puts himself in a place of danger and his negligence and danger are actually discovered by the defendant, then there devolves upon the defendant a duty which intervenes or arises subsequent to the negligent acts of the plaintiff, and that duty is to save the plaintiff from the consequences of his negligent acts if he can. The first duty of those who operate engines or motor vehicles is to'keep a sharp lookout ahead to discover the presence of those who might be in danger. If they perform that duty and discover that some one is in danger, then a second duty arises, and that is to use every possible available means to avert injury. If the defendant fails to perform that duty, his negligence in that respect is regarded as the proximate and the immediate cause of the injury and the negligence of the plaintiff in putting himself in a place of danger, the remote cause. In such cases the last clear chance' doctrine applies even though plaintiff’s negligence continues up to the accident.”- [183 La. 947, 165 So. 156.]
Therein the court further said:
“In cases of discovered peril, it is pertinent and material to ascertain whether the defendant could, after discovering plaintiff’s peril, have averted the accident by the exercise of due diligence. If he could have averted the accident by the exercise of due diligence and failed to do so, his negligence in that respect is considered the proximate and immediate cause of the injury, and the pláintiff’s negligence the remote cause, and the plaintiff may recover although his negligence continued to the instant of the accident. The basis of recovery in such cases is the defendant’s superior knowledge of the peril and his ability to avoid the injury. He has the last clear chance.”
The doctrine announced therein was reaffirmed in Jackson v. Cook, supra, the facts of which were similar to those presented to this court. Therein plaintiff while walking-on his right-hand side of the highway was struck and injured by defendant’s - automobile going in the same direction. He was walking on the wrong side of the road and was drunk and staggering. Defendant’s son, who was driving the automobile, testified that he did not see plaintiff until the car was about five feet from him, and it was then too late to avoid the accident. The Supreme Court re-applied the legal principles announced in Rottman v. Beverly, and held the defendant responsible for not discharging his duty as the driver could have averted the accident by the exercise of due diligence. Commenting on the difference between the two cases the court observed [189 La. 860, 181 So. 197]:
“In the Rottman case Mrs. Rottman was guilty of gross negligence which continued up to the moment of the accident. Beverly, the driver of the automobile, actually saw her in her perilous position in time to avert the accident had he used proper precautions. In the present case the plaintiff was guilty of gross negligence which continued up to the moment of the accident. The driver of the car did not see, but could have seen, plaintiff in his peril if he had been looking ahead. The mere fact that the driver of the car in this -case’ did not see plaintiff does not absolve -the defendant from liability, because it was the duty of the driver to look, and, according to the findings of both courts, he. was not looking.”- (Emphasis supplied.)
In Louisiana headlights on a level road under normal conditions must project a driving light, sufficient to render clearly discernible a person two hundred feet ahead. LSA-R.S. 32:290. Where such conditions exist it is the duty of a driver to keep a lookout and he will be presumed in case of accident to have seen what he should have seen in the performance of his duties. Louisiana Power & Light Co. v. Saia, 1937, 188 La. 358, 177 So. 238; Rea v. Dow Motor Co., La.App., 1948, 36 So. 2d 750; Buford v. Combs, La.App., 1951, 50 So.2d 469.
*614 The motor vehicle traffic law comprising LSA-R.S. 32:1-32:380 provides, section 237, subd. D:
“Upon approaching a pedestrian upon the traveled portion of any highway, the driver shall sound a warning * * * Pedestrians shall walk on their left hand side of the highway as near as possible to the edge thereof, and are prima facie responsible for any consequence of this failure so to do. Pedestrians crossing highways outside the corporate limits of incorporated cities or towns shall yield the right of way to approaching vehicles.”
The effect of the non-observance of these provisions by a pedestrian was urged in Rottman v. Beverly, supra. The provision then was incorporated in Act No. 21 of 1932. Judge Odom, after noting it seems to throw a greater responsibility upon pedestrians using highways than upon motorists and which was the reverse of rules established and adhered to prior to its adoption, then 'brushed the defense aside, saying:
“However, whatever may. be the effect of its application in determining the question of negligence in personal injury cases like this one, it does not abolish or modify the doctrine of last clear chance, which is firmly established not only here but throughout the entire country.”
Counsel for plaintiff urges that the case of Hollins v. Crawford, La.App., 1942, 11 So.2d 641, 644, decided by this court, has particular application to the -case at bar. The facts of the cited case reflect that a demented Negro was walking on the same side of the road as traveled by a car approaching him from the rear. When the car attempted to pass the pedestrian on the left without sounding his horn, plaintiff became startled and ran to his left into the side of the car and was injured. In holding defendant responsible, the court observed:
“If the interdict had been walking on the left side of the road and had been startled by this car of defendant as he was, he might have, and it is very probable he would have, run to the other side and the accident would have occurred any way. There is no way to account for what anyone will do under such circumstances and while suddenly frightened. On the other hand, if Crawford had sounded his horn when a reasonable distance from the interdict, he not only would not have been startled but if he had there would have been sufficient time for either or both to avoid the accident.
“The plea of contributory negligence is without merit. As above stated, the interdict did nothing more than any normal person would have done under the circumstances. While there might not have been any direct emergency and the interdict not hurt if he had remained where he was, the -action of Crawford in failing to give any warning of his approach created an emergency in the mind of the interdict as would likely have been done in the mind of any normal person.
“It clearly was not the fact that the interdict was on the wrong side of the highway in violation of the law that caused the accident for if he had stood there no accident would have occurred. It was the negligence of Crawford in not sounding a warning of his -approach that caused the interdict to suddenly run into the car through fright.”
Counsel for defendants have cited Hebert v. Meibaum, La.App., 1944, 19 So.2d 629, wherein it was held that the defendant did not have the last -clear chance. But the facts in that case are inapposite. Plaintiff was standing with his left foot on the running board of the car and the right foot on the pavement facing up town and when he left this position he attempted to re-cross the street and in doing so he was struck by the front bumper of defendant’s automobile. The facts there indicate that Hebert was aware of existing traffic conditions yet he stepped directly in the path of the oncoming automobile and -created an unavoid *615 able accident. In the instant case Wheadon was not aware of his perilous position and Porter had an opportunity to observe the conduct of Wheadon some distance away.
In Faecher v. Claret, La.App., 1935, 162 So. 227, to which we are referred, the pedestrians indicated by their conduct and actions to the on-coming motorist they would stop and permit him to pass by, then as the car was about to pass they stepped directly into its path. The instant case presents dissimilar circumstances.
In the cited case of Flowers v. Morris, La.App., 1950, 43 So.2d 917, this court sustained a plea of contributory negligence where a fifteen year old boy suddenly appeared in the beam of the motorist’s lights when at a distance of approximately forty feet from the rapidly oncoming automobile driven by defendant, who immediately applied his brakes and swerved sharply to the left. There was no opportunity to sooner observe the boy. This case is clearly one where the pedestrian left a place of safety beyond defendant’s range of vision and put himself in the path of an approaching car. Judge Hardy, the organ of this court, stated, La.App., 43 So.2d at page 920:
“ * * * clearly the time element at such instant would not admit of the application of the legal responsibility flowing from the discovered peril doctrine as against the defendant.”
Cited also is Dupuy v. Veazey, La.App., 1953, 63 So.2d 756. This case merely applied the rule there can be no recovery against a defendant who exercised due care in discovering the peril and after discovering it could not have avoided the accident. Herein, under our findings Porter was guilty of negligence in not discovering the peril and exercising due care to avoid the creation of an emergency in line with the doctrine announced in Rottman v. Beverly, and Jackson v. Cook, both supra.
Ledet v. Toye Bros. Yellow Cab Co., La.App., 1935, 160 So. 442, cited by respondents, can have no application to the case at bar for in that case the plaintiff who stepped in front of a taxicab was deaf and partially blind. Mr. Wheadon may have had poor eyesight but the record contains no evidence that he was not able to see an approaching automobile or hear its horn. Furthermore, it should be noted that when the automobile was very close to him, Wheadon had his back turned toward it, and, therefore, a causal connection between his eyesight and the impact does not exist. We have carefully reviewed other authorities cited in the brief of defendants’ counsel, but these authorities, in our opinion, are not apposite.
It follows from our findings, as set forth hereinabove, Porter should have observed Wheadon in or near the-center line of the highway apparently unaware of the approaching automobile. When he first observed the pedestrian in a position of peril had he sounded his horn or slowed his car, we are convinced the accident would have been averted. His failure to take these reasonable precautions brings into play the last clear chance doctrine.
At the time of his death Mr. W'headon was sixty-nine years of age, and his widow, plaintiff herein, sixty-six years old. Mrs. Wheadon testified she lived alone with her husband whom she married in 1913. They had but one child, a married daughter who lives in Lafayette, Louisiana. The deceased had regular income of $75 per month or $900 per year, and a normal life expectancy of about nine years. Wheadon entirely looked after and made repairs as needed to the small apartments which the couple owned and rented for approximately $100 per month. We are sure the loss of her husband has been a severe blow and Mrs. Wheadon has suffered greatly. At her age it will be difficult for her to readjust herself to a lonely life.
Plaintiff’s death occurred almost instantly. Dr. Winter testified the collision rendered Mr. Wheadon unconscious and he died within a few minutes thereafter. We are, therefore, certain the deceased did not suffer pain to any considerable extent. After giving careful consideration to all circumstances presented in the record, we are of the opinion plaintiff is entitled to an award of Twelve Thousand Three Hundred *616 Seventy-Two and 10/1,00' ($12,372.10) Dollars which award includes-funeral expenses incurred by plaintiff in the burial of her deceased husband.
It is, therefore, ordered, adjudged and decreed that the judgment be and the same is hereby annulled, set aside and reversed, and it is now ordered that there be judgment in favor of Mrs. Anna K. Wheadon, plaintiff, and against James E. Porter, Anderson-Dtinnam Concrete Company, Incorporated, and Fidelity & Casualty Company of New York, in solido, in the full sum of Twelve Thousand Three Hundred Seventy-Two and 10/100 ($12,372.10) Dollars, with legal interest thereon from judicial demand until paid, and all costs of this suit, including -cost of this appeal.